Professionals. Mr. Kalanchi, good morning. Good morning, Your Honors. May I please the Court, Chris Kalanchi, on behalf of Defendant Appellant, United Nurses and Allied Professionals. I begin with the term of our question of arbitrability. It is well within the purview of the District Court to determine questions of arbitrability. As this item of the Court has held, that term is limited in scope to two substantive gateway questions. Is there an agreement between the parties to arbitrate? And does the underlying dispute fall within the scope of that agreement to arbitrate? That's it. That is what is within the purview of the District Court. And if the District Court determines, as it did below here, that there is an agreement to arbitrate between the parties and the underlying dispute falls within the scope of that agreement, it must compel arbitration. In this case, there are two broad agreements to arbitrate between the parties. The first appears in the collective bargaining agreement between the Union and Prime. It subjects unresolved grievances to binding arbitration, and it defines grievance broadly, and I quote, any dispute between the hospital and the Union concerning the interpretation, application, or meaning of any of the expressed provisions of the agreement. The second agreement to arbitrate between the parties appears in the memorandum of agreement. It is also broad. It reads in relevant part, I quote, Prime shall recognize and continue to process any and all grievances and or labor arbitrations pending at the time of closing, closing meaning closing the transaction where Prime bought Landmark Hospital. The parties did not place any limitations on the breadth of their agreements to arbitrate. With respect to the second substantive gateway question before the district court, the underlying dispute falls squarely within the parties' agreements to arbitrate. In the grievance forms that appear in the appendix, Prime's supplemental appendix that is, the Union alleges that the subject pension plan was underfunded, otherwise terminated in violation of an express provision of the Landmark collective bargaining agreement, in particular article 20.4. Counsel, if we have ERISA preemption here, why doesn't that just, you know, all the questions you identified, those are important, often very difficult questions. It's a very complex body of law, but if ERISA preemption applies, why doesn't it just sort of sweep away all those questions of question of arbitrability, we're dealing with procedural or substantive matters, all of that construct that comes within that very complex body of law, it just gets swept away by ERISA preemption, doesn't it? We do not believe that it does, Your Honor. We believe that the question of whether or not ERISA, which is raised as an affirmative defense by Prime to arbitration, that is beyond the two gateway questions that the court has to decide in order to decide whether or not a case goes forward to arbitration. I would also argue that it appears in our brief that we think that the court alone got it horribly wrong in determining that this underlying dispute was preempted by ERISA, which I will get to in a moment. Can I just say, we're on count one of the declaratory judgment, ACT-Act's the only thing before it. Yes, Your Honor. And is count one, in your view, assuming that the arbitration clause applies, and then arguing that even though under the terms of the arbitration clause it applies, it's nonetheless preempted by ERISA? Because they make, on other counts, they contest whether the arbitration clauses that you read cover this kind of dispute. But as I read count one, they don't appear to be contesting that. So in thinking about the preemption claim, are we supposed to just assume then that it's preempted even if the arbitration clause does cover it? I would say no, Your Honor. And that's why we argue. Not to assume they're arguing. In other words, what is count one asking us to do, make a determination about whether the arbitration clause covers this, or make a determination that even if the arbitration clause covers this, it nonetheless can't be arbitrated because of ERISA preemption? The argument we make is that with respect to count one. No, I understand what you're arguing. I understand what count one is seeking in your view. Maybe you don't have... I think I would defer to my brother to speak to that issue, to the courts, to what they're seeking in that regard. Okay, well let me ask it this way then. If I thought count one was assuming that the arbitration clause applied, and saying it doesn't matter if it applies, it's nonetheless preempted. You say to us that just demonstrates that count one is not challenging the interpretability of this issue under the clause, because it doesn't meet either of the two gateway questions. Yes. Okay? Yes. Those principles about how we think about whether something's arbitrable are generally taken from the case law that's developed under the FAA generally, right? Yes. Okay, we've got a section 301 claim here, if you bring one, right? In other words, under the CBA, you're trying to enforce a CBA arbitration provision. We are. And that would be governed by section 301, correct? Well, I think section 301 would give us the opportunity to go to a different forum. But to enforce arbitration, not to litigate the underlying dispute. My understanding of section 301 is that you could argue in federal district court that the CBA has been violent as opposed to going through the arbitration process. And that's what I wanted to ask you about, because that's what happened in the Sixth Circuit, it looks like? That is what happened in the Sixth Circuit. Yes, so one thing that I'm just trying to understand, the issue of arbitrability never came up in the Sixth Circuit case. Correct. But I assume that CBA has an arbitration provision just like almost all these collective bargaining agreements do. Your Honor, I don't know whether or not that's the case, because I don't believe that that was in the body of the decision of the Sixth Circuit. It just simply said that. It doesn't say anything about that. But your basic position is even if there is ERISA preemption, nothing in any case that's out there suggests ERISA preemption speaks to the forum in which the ERISA preemption issue should be decided. All that speaks to that would be the normal principles under the FAA, or what one would think would be the federal common law under section 301 about how much force to give to an arbitration clause in the CBA. Yes. And I take it there's no precedent that suggests we're supposed to look at the arbitration provision of the CBA any less broadly than any other arbitration provision. If anything, we should give it particular effect. Yes. Okay. Yes. Now, because Article 20.4 of the CBA, which we know was violated, just so I understand also, what grievance is the grievance that they're claiming is preemptive? Is it the first grievance, or is it the claim that they failed to arbitrate the first grievance? My understanding is that their argument is that the first grievance in which the union alleges a violation of 20.4 of the patient provision of the landmark contract, that that's what's preemptive. And you contend that that is in fact a pending grievance? Yes. And you also have a second pending grievance, which is Prime's failure to arbitrate that first grievance? Yes. Okay. And are they arguing that both of those are preempted? They have not addressed the second one. They have only addressed the first one. They've only addressed the first one. Yes. So in theory, the second one would still be a... Okay. So, one, there's an agreement to arbitrate, explore. Two, 20.4 falls within its scope in our view, and therefore arbitration should be compelled. And the court below was very clear in deciding those two gateway matters we believe in favor of the union, and I quote from the decision. The union did everything within its power to preserve the right to arbitrate the grievance with Landmark and then Prime over contributions to the retirement plan. And then the court went on to say, I continue to quote, this right was included in the collective bargaining agreements with both Landmark and Prime, further delineated in the memorandum agreement with Prime. And that decision appears in the addendum of pages 11 and 12. Notwithstanding that the district court offered this opinion on them, they decided that the matter was preempted because of scope. And our argument is that the preemption question does not qualify as a question of arbitrarily or arbitrability. Our argument is that it goes well beyond those two substantive gateway matters. This honorable court has held that those kinds of procedural questions that go out of the underlying dispute and bear on its final disposition are for an arbitrator to decide. And similarly, this honorable court has held that from the defense of arbitration are for an arbitrator to decide. I turn now to the preemption argument. We argue that the court got it wrong below, that this matter is not preempted, that the Sixth Circus decision in United Engineering well beyond scope of how it should have been read. Claims against plan sponsors. Contributing plan sponsors may very well be preempted by ERISA section 1362. Prime is not and has never been a plan sponsor of the subject pension plan. There is no factual dispute in that regard. And as the district court in California, it was a northern district, we saw Paulson v. CNF. That court observed that that distinction between the plan sponsor and a party that is not the plan sponsor is critical. Those are the words of the court. And the Sixth Circuit said, after this decision in United Engineering, our holding was decided on the narrow ground that ERISA preempts claims against plan sponsors only. Claims against successors. What's the remedy you're seeking? Aren't you seeking the same benefits that you would seek from the sponsor? What we're seeking is as follows, Your Honor. The PGC has trusted this plan that was terminated in a distress termination. It is not clear whether or not ERLA's guaranteed and non-guaranteed benefits will be insured. We argue, and would argue to arbitrate or would we be permitted to do so, that if there is any difference between what employees would have been entitled to. Isn't that the very same money and relief you would seek against the sponsor if it wasn't a successor? It is not at all. Why not? Because the claim is against Prime. Dr. Linus, the actual thing you're trying to get, the actual cash benefits, it's the very thing. So in the Palmer case, you were trying to get something that that case involved a third party in the full sense. It was their negligence as an actuarial. So the damages wouldn't be the same kind of money that the sponsor would have paid out. But here, you want the very thing that if there hadn't been a successor, you'd be asking from the sponsor. You're just asking for a different person to give it to you. Well, we are, but that's a political discussion. But why, given the policy under ERISA, why should that make a difference? Because the policy that seemed to lead to the Sixth Circuit case was a policy about extinguishing the benefits, paying them all out to the PPGC, and then having a priority schedule how the rest are paid. Why wouldn't this just do an end run around that? Well, it wouldn't because the planned sponsor, in this case, Landmark Medical Center, is liable to the PPGC for the total of the unfunded liabilities. Whatever they have left, it was a machineship. Whatever they have left- Wasn't one reason to do that so that successors could come in and take things free and clear without this burden? Or is your thought that, no, they really meant to leave this burden lingering so that the successor comes in and has to take it? When the Prime Minister intervenes with an arbitration agreement with the National Barter, it's said that we will recognize and process any and all grievances and demands for arbitration that have been made at the time of closing. We would argue they cannot, then, turn around and say, except for that grievance that was made at the time of closing. That same argument could have been made in the Sixth Circuit case, because there was a CBA provision they were trying to enforce there, but they said it was so overwritten. I can't call anything from that Sixth Circuit decision as it relates to the CBA, because that just was not in play and not an issue. And I don't know why- Well, the arbitration clause wasn't, but the CBA was. They referred to the CBA. Yes. So they contracted for payment of benefits. They said it doesn't matter, because there was a preemptive. So why not same thing here? In other words, just the fact that there was a contractual arrangement in the CBA doesn't seem to, under the Sixth Circuit's reasoning, tell us whether ERISA overrides it. If there's been a violation of the CBA, if the benefit is 100% insured by the trustee of the WGC, then, arguably, there's nothing that the employees are entitled to receiving that would be made horrible if there's a violation that's not fully covered. And the distinction between the plan sponsor and somebody like Perl is not the plan sponsor. It's absolutely critical. Counsel, let's start with Perl. Just so I'm clear, your position is that, as a matter of fact, the issue of ERISA preemption, that can and should be raised to the extent that your employee wants to raise it. That should be raised before the arbitrator. Is that correct? Yes, Your Honor. Okay. So we know how courts are to treat the dissentance of an arbitrator. I mean, there is very limited review in court for any decision of an arbitrator. The logic of your position is that these issues of ERISA preemption, these issues of the enforceability of the kind of demand that you're making for payments of unfunded liability, all of that, you're turning over all of those difficult questions which have been addressed arguably by this comprehensive ERISA scheme. You're turning those decisions over to arbitrators all around the country whose decisions are then subject to very limited review in court. How do you reconcile that kind of system with the need, arguably, to maintain some kind of coherent, uniform scheme of ERISA enforcement, which the courts are supposed to provide? I'm just asking how you reconcile the purpose of ERISA, particularly in this area where we're dealing with termination of pension plans and so forth. How do you reconcile the need for uniformity with basically turning all these decisions over to arbitrators whose decisions are scarcely subject to any review? Well, the way I'm going to point to that, Your Honor, is the Supreme Court case, the 1989 Supreme Court case, the name of it, I don't have on the tip of my tongue. It's said a long time ago that we ought not fear whether or not the form of arbitration is a place where there can be adequately appropriate decisions made on issues such as this, which is why we have the Federal Arbitration Act and why we have the Steelworkers Trilogy and why it sends a lot of things to arbitration once we get beyond the two gateway questions. In other words, basically, there's no general bar to resolving ERISA preemption issues and arbitration happens all the time. No, I said in the brief where various causes of action under ERISA are found to appropriately be before an arbitrator rather than a court. May I ask one last point quickly? Well, yes. One other argument is that, and you don't want it to be lost, is that if you read that decision below, you will find, we think, that while the court said we don't squarely decide this case based on the doctrine of mootness, that's exactly what they did and they cited a case to support that argument. And the 10th Circuit case with the proposition that, look, if a district court thinks that the matter is frivolous, that there's no relief available to the union where they need to prevail, that it's otherwise moot, that those are not bases for which it is appropriate for a district court to say that they can bar arbitration from taking place. Thank you. Thank you. Mr. Casey, good morning. Good morning, Your Honor. Please support David Casey on behalf of Prime Health Care. Private parties cannot lawfully agree, whether in the form of an arbitration provision or otherwise, to do that which Congress precludes. And arbitrators cannot order or cannot issue enforceable orders, at least, that are contrary to federal law. That's the import of the Sixth Circuit case. It doesn't matter whether it arises in the context of a 301 action or in the context of arbitration. The point is that Congress has occupied this field and it has said that the PBGC and only the PBGC can terminate and administer distressed single-employer pension plans. You could agree to pay the nurses the amount that they want, correct? No. You couldn't? It would be illegal for you to give them a check for the amount they want? Yes, because the Pension Benefit Guarantee Corporation has assumed control of the plan. And just briefly to look at it. So there's no way you could ever give them the money they want? Just like we couldn't do it if it was in bankruptcy. It's a very analogous concept, Your Honor. Once the PBGC terminates a plan, which it can do unilaterally, and once it is appointed as trustee, then it and only it can recover benefits and can pay benefits. And at that point, it stands in the shoes of my client and is the sole auditor of what it collects and what it pays, and we are out of the picture. That is the essence of the statutory scheme. And if I might just briefly walk through five provisions. Before you let me try to find in my papers what I can, what is the specific section that you rely on for saying that arbitration has been preempted? Well, there is a general preemption provision, which is Section 1142, I believe. But the argument is that the entire statutory scheme makes it clear that there is a singular process that cannot be intruded upon either through litigation under Section 301 or through arbitration. Let me just walk through the five key provisions, and this is not an exhaustive list. 29 U.S.C. Section 1342a says that the PBGC may terminate and trustee a plan notwithstanding the existence of a collective bargaining agreement. Secondly, 29 U.S.C. Section 1342d, Provisions 2 and 4, provide that as the trustee, the PBG has the power to require the transfer of all assets of the plan to himself as trustee. The PBGC gathers all of the assets. And similarly, has the power to limit payment of plan assets. So you've got the PBGC having the power to terminate a plan, administer the plan, collect all plan assets, and pay and limit the payment of plan assets. In turn, the PBGC guarantees, this is the quid pro quo, it guarantees the payment of vested benefits, all vested benefits, to the plan beneficiaries, and it pays a formulaic amount of unvested benefits to those same beneficiaries. Number four, the plan sponsor's liability by statute is explicitly limited to the PBGC only. And finally, the sole remedy that Congress has created for any violation of this entire process that I've just laid out is a claim for equitable remedies only against the PBGC only. I've had a question in my mind throughout this case, and help me, because it may not be relevant at all. But aren't you, in effect, representing a successor employer here? Yes, we are. So basically, this is a labor dispute with a successor employee, which under the contract that you have agreed to, has to go to the administration to request it. It's not a labor dispute. That's the point, Judge. It is a dispute about the payment of pension benefits after the pension plan has been terminated and placed into trust by the wholly owned federal organization that was created specifically to do just that and guarantee payments to plan beneficiaries. The problem that I have with that argument is that if you are a successor employer, you are responsible for whatever you inherited from the prior employer. Not after the plan has been terminated. The point is, according to Congress, once the PBGC terminates a plan, all plan assets are then controlled and owned by it and only it, and the successor in interest or the alleged violator who failed to pay benefits into the plan that led to its distressed status, the predecessor in interest, they are out of the picture. The PBGC now stands in their shoes. It is like a bankruptcy trustee. It controls and only it controls the collection of funds and the disbursement of funds and to do otherwise would interfere with the congressional scheme of both guaranteeing funds and paying those out according to an elaborate priority. As a successor, do you have any current obligation to the PBGC in consequence of what happened with Landmark? The PBGC can proceed against us to collect deficiencies if it so chooses. That's up to the PBGC, and we do what they tell us to do. And is your position that you do or don't have deficiencies? Oh, there were deficiencies. So right now that you are liable to the PBGC. The PBGC has done its work. It has collected the amount of money that it intends to collect, and we are square with the PBGC. Okay, given that, given Judge Torreira's question, why doesn't that make this then a labor dispute? You entered into an agreement with this union, notwithstanding that everybody was square with the PBGC and that stuff is over, to give them more than you had to do. That was part of your labor negotiation. The CDA provides that. You did it because Prime said, well, we'll take on this grievance. Maybe you didn't have to. If they were going against a sponsor, maybe they'd have a problem trying to enforce this. But you made a separate deal, which they now want enforced pursuant to their arbitration clause. Why would ERISA step in and say you can't make that deal? Congress can, through various laws, preempt labor laws, and I'll give you a couple of examples. I understand that, but don't all of the provisions in ERISA you just mentioned are contemplating the liability of the sponsor, which you are not? It's successors and interests. Only successors when there's a conclusion that the successor became a successor, I thought, to evade the pension liability. Well, yes. But you're not in that category. No, but it begs the question of what is our liability? Our liability stems only from the violation of the predecessor. Exactly. So if you don't have any, you nonetheless agreed their claiming in the CDA to pay them. So that's just a labor dispute. We didn't agree to pay them. Well, that's what you're going to argue to the arbitrator. And they would like that resolved by the arbitrator. I appreciate the question, but it turns on the premise that I think, frankly, is a false premise that this is a labor dispute. Let me give you an example. A labor union could negotiate with an employer that any act of violence on the work site is subject to arbitration. That doesn't mean that the federal or state government can't come in and preempt that and prosecute physical violence if it thinks it's appropriate. But that's a different issue. No, it's not. Because one is a criminal issue and the other one is a labor dispute. No, but that's my point, Your Honor. This is not a labor dispute. This is an issue about the payment of a failed pension plan. And Congress has said when it comes to payment of pension benefits, Congress has created a federal organization that will determine whether or not there is a deficiency, will determine whether or not that pension has to be placed into receivership, will collect all assets, distribute all assets, and eclipse the liability of those who are allegedly in violation of funding. That's what Congress has said. The idea that the nature of the CBA violation that they're claiming depends on they're effectively asking for a determination that there is a pension liability. Correct. And that's something that only the PBGC is entitled to assert. That's the argument? That's one way to frame it. The other way to frame it is that a failed pension is the exclusive province of a federally created agency and it alone can address those issues. And it takes it out of the purview of a classic labor dispute. Suppose it went into arbitration and you lost and you had to pay the benefits under that arbitration agreement. Would that bar the PBGC from coming after you for any benefits it now claimed were deficient and that you owed? PBGC has already done that. No, but if they wanted to do it subsequently. How is PBGC prejudiced in any way by an arbitrator deciding against you on this issue? The PBGC is prejudiced because it loses control over administering failed pensions nationally. That's how it's prejudiced. In your particular case, what would PBGC lose out? Is the idea that there's some assets it might otherwise have claimed that would already have been handed over? I just don't understand. How does the resolution by an arbitrator of your dispute with the union hurt PBGC? It undermines its authority. And the PBGC has no process for suing my client outside of the trustee process that it has already undertaken. And it can still do that whether you arbitrate this claim or not, can't it? Yes. How does arbitration get in the way of it doing that? It gets in the way of the overall national administration of this program. Let me give you one other example, and I see that my time is nearing an end. So I'm trying to help the court understand that this is, even if it is a theoretical labor dispute that is preempted by congressional scheme that says our scheme takes precedence. Think for a moment about a question that is arbitrated all the time between management and labor with respect to misconduct by a truck driver. A truck driver allegedly uses illegal substances and is terminated on that basis. This is an example that Judge Easterbrook used in a case that is similar to the one that we're arguing. And that case is found at 248 Feb 3rd, 577. Was it cited in your brief? We did not. All right, send us a letter. I will, Judge. But what Judge Easterbrook said is that, yes, the labor union and management can agree to arbitrate over the appropriate discipline related to drug use by a truck driver or alcohol use by a truck driver. But if the drug use or alcohol use results in a criminal prosecution and conviction, no labor arbitrator can order that truck driver back into the truck if he or she has lost his license to drive by virtue of the criminal prosecution. The point being that there are certain affirmative laws, both at the state and federal level, that eclipse the ability of an arbitrator to issue an enforceable order. And that's precisely what the case is here. Congress has completely occupied the field with respect to the field. And it also occupied the field not only of Congress but the Supreme Court. Well, all these cases of the triology and all these cases that say that arbitration is the key to labor relations. Yes, but there are exceptions. And when Congress preempts and occupies the field, then the right or the presumption of arbitration... In the case you give us, I understand that a state law says you can't have a license. Right. Since it's illegal to drive without a license. Right. They can order, I suppose you can go drive in a truck. But since there's a separate legal prohibition against driving in a truck without a license, that order's not worth very much. That's the same thing that we have here. So here I don't fully understand. Because PPTC, if it wants to sue prime or bring an action against you or claim that you're not paying them something you owe them, can do it yesterday, today, or tomorrow. And it can do it whether you make a side agreement with the union to give them cash or not. No, but that's not the point, Judge. Why isn't it? Because Congress said in 1362 that the liability of the plan sponsors... Which you are not. Or its successor, which you are also not, because that successor is one who is a successor that evades liability. We don't have any argument that you are. You're trying to win even if you're not that. There are a couple of points that are interrelated, if I might very briefly state them. The PBGC, according to Congress, all plan sponsor liability ends when the PBGC terminates the plan. At that point, the plan sponsors are out of the picture. They have no responsibility to the plan beneficiaries. The plan beneficiaries have no recourse against them. There are only recourses against the PBGC, and the PBGC takes over all of the assets of the plan. The union is not going after the sponsor. It's enforcing an agreement with a non-sponsor. No, it's enforcing an agreement that the predecessor breached. That's the origin of the claim. The claim is that Landmark didn't fund the plan. But the statute says that the determination of the assets of the plan is kept at the stage where the PBC terminates it. The PBCGC terminates the plan. It collects all of its assets, and it alone disperses payments to the beneficiaries, and the employer has no liability whatsoever thereafter because the PBGC has stood in its shoes. The argument of the Sixth Circuit, and every court that has looked at this type of issue since then, has said that that statutory scheme preempts any kind of action, whether it's under 301 or whether it's arbitration. Where's the case saying it does it as to arbitration? No, there is no case that says it as to arbitration. There's no case that squarely says it as to arbitration. But the same analysis applies. There's no cause of action. That's what we're trying to figure out. Why? The cause of action is the enforcement of the arbitration clause and the CBA provision, and the arbitration clause, you're trying to say just drops out. We're just trying to find out where in ERISA does it tell us that the choice of form is equally critical. It doesn't say that explicitly. The import of the statutory scheme is to preempt actions, whether they are in the form of arbitration or litigation, that would interfere with the exclusive authority of the PBGC to resolve these matters. That's the essence of the judge's decision. That's the essence of the Sixth Circuit decision, and we suggest that the court was right below. When the cover memorandum was signed and when the company was transferred or bought out, were there any other pending arbitrations or grievances other than this one? I don't know the answer to that, but I will say that. I think that's rather important because you people agreed that you would handle or process all pending grievances or arbitrations. If that's the only one that was pending, it would seem to me you had that in mind. And the point, Your Honor, is that whether we agreed or not to arbitrate, this subject matter is not subject to arbitration. Okay, I understand your point. That's the argument. Thank you. Thank you. Otherwise, rest unbriefed, Your Honor. Thank you. Unless there are any questions.